IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DONNIE R. JORDAN                  PLAINTIFF

    v.       Civil No. 04-2218

RUBEN COLE, Jailer;
BOB ROSS, Sheriff;
ALLEN KAYLOR; and
TERRY REA, Jail Administrator            DEFENDANTS

## MEMORANDUM OPINION

Donnie R. Jordan brings this pro se civil rights action under 42 U.S.C. § 1983. He contends that his constitutional rights were violated while he was detained in the Crawford County Detention Center.

On April 29, 2005, the defendants filed a motion for summary judgment (Doc. 9). By order entered on May 17, 2005, Jordan was directed to complete, sign, date, and return an attached questionnaire that would serve as his response to the summary judgment motion. On June 17, 2005, the plaintiff's response (Doc. 13) to the summary judgment motion was filed. The summary judgment motion is currently before the undersigned for issuance of this memorandum opinion.

### I. Background

Jordan arrested on November 11, 2003 and was then released on bond. (Doc. 13 at ¶ 2.) He was again arrested two days later, on November 13, 2003. (Doc. 13 at ¶ 3.) He remained in the Crawford County Detention Center (CCDC) until he was released on bond on December 23, 2003. (Doc. 13 at ¶ 13.) Jordan claims that he was subjected to unconstitutional conditions of

confinement while detained at CCDC and that the defendants were deliberately indifferent to his serious medical needs.

On December 9, 2003, Jordan filed a grievance form. He alleged in this form that at 11:00 p.m. the previous night he began smelling strong chemicals, which adversely affected his lung recovery from emphysema. He claims that he informed defendant Ruben Cole about the smell. Cole told Jordan that the smell was coming from paint fumes. On the morning of December 9, Jordan reported in the grievance that he was experiencing wheezing and shortness of breath. (Doc. 13 Attach.)

In response to the December 9 grievance, defendant Terry Rea instructed Jordan to file a medical request to see the nurse and remarked that he was advising the trustees about Jordan's condition and that they should not paint near Jordan or his cell. Rea's response was made on December 10. (Doc. 13 Attach.)

On December 10, Jordan contends that he was experiencing high fever and was "delirious most of the time." He further states that Cole saw him in this condition and did nothing about it. (Doc. 13 at ¶ 7.) Jordan admits that the paint was no longer applied near his cell, but he contends that he still had to breathe some of the fumes. He also states that although painting was not done near him, silicone caulk was applied "adjacent to my head in the shower as I slept on the floor with my feet soaked of rain water from a leaky sky light and experiencing fever." (Doc. 13 at ¶ 7.)

On December 13, Jordan filed another grievance. In this grievance, he states that he awoke to "overwhelming fumes of silicone" and that "by sunrise I was coughing up blood." He stated that he showed the blood on his shirt to Cole. (Doc. 13 Attach.) In response to this

-2-

grievance, jailers contacted a Nurse Charles Wall (who is not a defendant) who directed that Jordan could have Benadryl that night and Tylenol for five days. Jordan began receiving this medication on December 15, not on December 14, as the grievance response indicated he would receive the medications. (Doc. 13 at ¶¶ 8-9.)

On December 16, Jordan was examined by Nurse Wall who noted that Jordan was suffering from scattered wheezes, but no dyspnea (shortness of breath) and that the lungs were clear. Nurse Wall ordered that Jordan continue the Advair diskus and receive cold pills as needed for his "sniffles." (Doc. 9 at Ex. 4.) Jordan contends that Nurse Wall told him that he needed the prescribed medications to clear his lungs. (Doc. 13 at ¶ 11.) Jordan also states that his lungs "started natural recovery after six (6) days" and this was before he received medications. (Doc. 13 at pg. 9.)

Jordan does not describe any actions or decisions made by defendant Alan Kaylor. His claims against Sheriff Bob Ross concern Ross's actions relating to Jordan's arrests. Jordan now says in his summary judgment response that he wishes to pursue claims concerning his arrest in this action, however those claims are not raised in the complaint. (Doc. 1 & Doc. 13 at ¶ 2, 5.)

## II. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts,

AO72A
(Rev. 8/82)

by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d 607 *(citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show [1] a deprivation [under color of law] of [2] a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). "[T]o establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury." *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992).

**Official Capacity Claims**

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the

*Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.

*Gorman*, 152 F.3d at 914 (citations omitted).

The Eighth Circuit has consistently advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989); *see also Andrus v. Arkansas*, 197 F.3d 953 (8th Cir. 1999) (in actions against officers specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability). When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity.").

The plaintiff now states in his summary judgment response that he was intending to name the defendants in both their official and individual capacities (Doc. 13 at ¶ 1), and the factual allegations alleged in the complaint appear to support that claim, in that the factual allegations

are claims that the defendants, as individuals, were depriving him of his constitutional rights. The court will review both official and individual capacity claims against these defendants.

Under section 1983, a governmental entity may not be held vicariously liable for the unconstitutional acts of employees. A governmental entity, however, may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional custom or policy. *See Doe v. Washington Co.*, 150 F.3d 920, 922 (8th Cir. 1998).

Thus, Crawford County would be held liable for defendants' conduct only if it had a policy or custom that caused plaintiff's injury. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). In the absence of a written policy, plaintiff must identify a pattern of widespread unconstitutional conduct that was so pervasive and well-settled that it had the effect of law. *See Jane Doe A v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 646 (8th Cir. 1990). Plaintiff must show that Crawford County "through its deliberate conduct . . . was the 'moving force' behind the injury alleged." *Brown*, 117 S. Ct. at 1388.

"[I]naction or laxness can constitute government custom if it is permanent and well settled." *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 807 (8th Cir. 1994) (citation omitted). "Such a government custom of laxness or inaction must be the moving force behind the constitutional violation." *Id.*

Any suggestion of the existence of a basis the hold Crawford County liable is wholly lacking. There is simply nothing from which to conclude a genuine issue of fact exists to the County's liability. Defendants are therefore entitled to summary judgment on Jordan's official capacity claims.

AO72A
(Rev. 8/82)

**Conditions-of-Confinement Claim**

"As a general matter, a prison official commits an Eighth Amendment violation only when two requirements are met: (1) the deprivation alleged must be objectively, sufficiently serious, and (2) a prison official must be, as a subjective state of mind, deliberately indifferent to the prisoner's health or safety." *See Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995) (internal quotations omitted).

In a similar factual situation, the Eighth Circuit held in *Givens v. Jones*, 900 F.2d 1229 (8th Cir. 1990), that prison officials did not inflict cruel and unusual punishment upon an inmate by allowing remodeling and renovations to continue in the area where the inmate was housed after that inmate notified the jail officials that the noise and fumes were giving him migraine headaches. The Eighth Circuit noted that "[d]isturbing prison conditions that came about by inadvertence or error in good faith, however, do not constitute constitutional violations, even though the conditions may involve the infliction of discomfort and pain." *Givens*, 900 F.2d at 1234. The court concluded that without proof that the alleged conduct was "the result of malicious intent or even reckless disregard for his well being," the plaintiff had failed to show a constitutional violation. *Id.*

When Jordan complained about the paint fumes, defendant Rea instructed Jordan to submit a medical request and directed the trustees to not paint near Jordan's cell. These actions indicate that the defendant was not deliberately indifferent towards Jordan's conditions, rather the defendant took affirmative steps to minimize the effect of the fumes on the plaintiff. As pointed out by the Eighth Circuit, "[r]emodeling and upkeep of institutions and buildings, in and out of prison, is a fact of life that must be faced by most individuals." *Id.* The mere fact that

later silicone was applied in an adjacent shower area at most states a claim of negligence, which is not actionable under section 1983. *See Wilson v. Seiter*, 501 U.S. 294, 305, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

The defendants are entitled to summary judgment on plaintiff's claims that the conditions of his confinement violated his constitutional rights.

**Medical Claim**

The deliberate indifference standard is also applied to medical claims and includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) ("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam)

AO72A
(Rev. 8/82)

(internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

When Jordan first complained about the fumes and that those fumes were causing difficulty with breathing, defendant Rea instructed Jordan to submit a medical request. Jordan states that he did not do so immediately because he was delirious and had a fever, and that defendant Cole saw him in this condition. Jordan submits no proof to establish that Cole actually knew that Jordan was suffering from delusions and fever. After Jordan submitted a grievance (but not a medical request) that he was coughing blood, defendants immediately contacted the jail nurse by phone and within one to two days, Jordan was receiving medications. Three days after that submitting that grievance, Jordan was seen by the jail nurse who prescribed further medications to treat "sniffles." The defendants jailers acted upon Jordan's complaints about the

fumes and the resulting medical complications, and thus were not deliberately indifferent to his serious medical needs.

**Kaylor and Ross**

Jordan names Allan Kaylor as a defendant in this action, however there is nothing in his complaint about Kaylor nor are any of the factual events attributed to Kaylor. Therefore, it is proper that Kaylor be dismissed as a defendant in this suit as Jordan has failed to state a claim against Kaylor. *See Potter v. Clark,* 497 F.2d 1206, 1207 (7th Cir.1974) (per curiam) (court properly dismissed pro se complaint that was silent as to defendant except for his name appearing in caption); *see also Krych v. Hvass*, 83 Fed. Appx. 854, 855 (8th Cir. 2003) (unpublished per curiam) (plaintiff failed to state claim against named defendants where he listed defendants in complaint and did not allege defendants were personally involved in constitutional violations).

In his summary judgment response, Jordan states that at jury trial he would show how illegal child pornography was placed on his home computer and how Sheriff Bob Ross was personal friends of those who sought to have him put in jail. (Doc. 13 at pp. 7-8.) He also states that "this case is not about why I was arrested." Rather, he claims that it is "about how I was treated while in the total custody and control of the defendants in this case." (Doc. 13 at ¶ 2.) To the extent that Jordan might be trying to bring any claims concerning his arrest and detention on charges of child pornography, those claims are not alleged in the complaint, and thus are not presently before the court for review. Second, it appears that the plaintiff is attempting to hold Sheriff Ross liable on the basis that Ross was the supervisor of the other defendants who

supposedly violated Jordan's constitutional rights. Jordan has presented no evidence to suggest that Ross actually knew about his claims while they were occurring, and respondeat superior liability is not permitted under section 1983. *See Boyd v. Knox*, 47 F.3d 966, 968-69 (8th Cir. 1995) (no respondeat superior liability under § 1983; supervisor is liable where he is personally involved in violation, i.e., where he knows about conduct and facilitates it, condones it, or turns blind eye). Thus, Jordan has not stated a claim against Ross.

## IV. Conclusion

Therefore, defendants' motion (Doc. 9) for summary judgment is hereby granted, and this case is dismissed with prejudice.

IT IS SO ORDERED this 4th day of January 2006.

                                                                 **/s/ Beverly Stites Jones**
                                             _____
                                             HON. BEVERLY STITES JONES
                                             UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**